# EXHIBIT B

FILED IN OFFICE

FEB 2 4 2014

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

STEVEN BELLEN,                    )
                                  )
        Plaintiff,                )
                                  )
                                  )        CIVIL ACTION NO.
v.                                )
                                  )        2014CV242748
INNERWORKINGS, INC.,              )
                                  )
        Defendant.                )
                                  )

**VERFIED COMPLAINT**
**FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**COMES NOW** plaintiff Steven Bellen ("Mr. Bellen") and files this Verified Complaint

for Declaratory Judgment and Injunctive Relief against defendant Innerworkings, Inc.

("Defendant"). As grounds therefore, Mr. Bellen alleges as follows:

1.       This lawsuit arises in the context of a former employment relationship between

the parties.  Mr. Bellen seeks a declaratory judgment and a temporary restraining order and/or

interlocutory injunction and permanent injunctive relief relating to certain restrictive covenants

contained within an alleged "Employee Innovations and Proprietary Rights Assignment

Agreement" (the "Agreement") that neither he nor the Defendant ever executed.  A true and

correct copy of the alleged Agreement as well as a demand letter from Defendant's counsel is

attached hereto as Exhibit "A" (the Agreement is one of the attachments to the demand letter).

**THE PARTIES, JURISDICTION AND VENUE**

2.       Mr. Bellen is a resident of the State of Georgia and has standing to bring this

action in this Court.

3.      Defendant is a publically traded (Nasdaq INWK) Delaware corporation that is principally engaged in providing print management and promotional solutions to its corporate clients.  At all material times, Defendant actively transacted business in the State of Georgia, including Fulton County. Defendant may be served with process by and through its Registered Agent for service of process, CT Corporation System, 1201 Peachtree Street, N.E., Suite 1240, Atlanta, GA 30361, or by and through an authorized person or agent upon whom service may be had.

4.      Jurisdiction is proper in this Court pursuant to O.C.G.A. § 9- 4-1 *et seq.* and GA. CONST. ART. 6, § 4, ¶ 1 because declaratory and equitable relief within the exclusive jurisdiction of this Court are sought.

5.      Venue is proper in this Court pursuant to O.C.G.A. § 14-2-510 because Defendant maintains its registered agent in Fulton County and because Defendant has an office/facility and actively transacts business in Fulton County.

## GENERAL ALLEGATIONS

6.      Mr. Bellen became employed by Defendant as a Senior Project Manager on or about August 2007.

7.      As evidenced by the attached Exhibit A, (i) neither Mr. Bellen nor Defendant executed the Agreement and (ii) the Agreement does not name or list Mr. Bellen as a party to the Agreement.

8.      The Agreement in paragraph no. 13 contains restrictive covenants that seek to prohibit Defendant's employees for a 24 month period after termination of employment from (i) competing with Defendant in the United States (and potentially worldwide) and (ii) soliciting any customer of Defendant.

2

9.     Based on information and belief, Defendant required certain of its Georgia based employees to access the ADP website on or about May 13, 2011, open a pdf file containing a copy of the Agreement, and then check a box stating that "I certify that I have read the policy above."

10.     Mr. Bellen accessed the ADP website on or about May 13, 2011.  During that session, Mr. Bellen opened what he believes was a pdf file containing a copy of the Agreement and checked a box stating that "I certify that I have read the policy above."  A true and correct screen shot of the checked box is attached hereto as Exhibit B.

11.     Mr. Bellen terminated his employment with Defendant on January 17, 2014.

12.     Mr. Bellen received Exhibit A from Defendant's counsel on or about January 17, 2014, threatening litigation if Mr. Bellen became employed by a competitor of Defendant.

## COUNT I – DECLARATORY RELIEF

13.     Mr. Bellen re-alleges and adopts paragraph nos. 1-12 of this Verified Complaint.

14.     Mr. Bellen desires the opportunity to explore and pursue, intends to pursue and will and is pursuing other opportunities in his chosen profession in order to provide financially for himself including, but not limited to, engaging in the provision of services on behalf of himself and/or other persons and entities that are similar to the services Mr. Bellen provided on behalf of Defendant.

15.     Neither Mr. Bellen nor Defendant executed the Agreement.   Defendant has contended, and will undoubtedly continue to contend (including threats of litigation), that the relevant restrictive covenants are enforceable and binding upon Mr. Bellen.

3

16.     Mr. Bellen reasonably believes that Defendant will take action in an attempt to enforce the above-described restrictive covenants of the Agreement to prevent him from engaging in his chosen profession.

17.     While Mr. Bellen believes that the parties did not enter into the Agreement, he respectfully requests this Court settle and afford him relief from the uncertainty and insecurity he has with respect to his rights, status and other legal relations arising in relation to the Agreement.

18.     There exists an actual, justiciable controversy between the parties entitling Mr. Bellen to a declaratory judgment that the Agreement is unenforceable.

19.     The ends of justice require that the Court should take such requested action for the guidance and protection of Mr. Bellen.

20.     Mr. Bellen prays that the Court enter a final Declaratory Judgment that the parties did not enter into the Agreement and, therefore, the Agreement is unenforceable.

## COUNT II – TEMPORARY AND PERMANENT INJUNCTION

21.     Mr. Bellen re-alleges and adopts paragraph nos. 1-20 of this Verified Complaint.

22.     Mr. Bellen will be irreparably harmed if Defendant is allowed to take any action to enforce the Agreement against him.

23.     Given the unenforceability of the Agreement, the likelihood of irreparable harm that will befall Mr. Bellen if Defendant takes action to enforce the Agreement against him, or attempts to prevent him from engaging in his chosen profession, far outweighs the potential harm to Defendant if the Court were to grant the injunctive relief requested herein.

24.     The public policy of the State of Georgia would not be adversely affected and, in fact, would be upheld if this Court grants the requested injunctive relief in favor of Mr. Bellen

and against Defendant in that Mr. Bellen only seeks to prevent Defendant from doing what it has no right to do – take action to enforce the unenforceable Agreement against him.

25.     Mr. Bellen is without an adequate remedy at law to prevent action against him by Defendant based on the unenforceable Agreement.

26.     Mr. Bellen has a substantial likelihood that he will prevail on the merits of his request for declaratory and permanent injunctive relief in this matter.

27.     Mr. Bellen prays for an expedited hearing and a temporary restraining order, interlocutory injunction and permanent injunction from this Court enjoining Defendant, and any associated person or entity acting on its behalf, from attempting, in any way, and in any forum or jurisdiction, to prevent Mr. Bellen from engaging in any act that would violate the relevant restrictive covenants of the Agreement.

**WHEREFORE,** Mr. Bellen prays as follows:

(a)     that the Court immediately hear his request for temporary injunctive relief and advance the trial on the merits of this action and consolidate such trial with an interlocutory injunction hearing pursuant to O.C.G.A. Sec. 9-11-65(a)(2);

(b)     that the Court permanently enjoin Defendant as requested herein;

(c)     that the Court grant the requested declaratory relief; and

(d)     that the Court award him any further relief it deems just and proper.

5

Respectfully submitted this 24th day of February, 2014.

Robert E. Johnson, Jr.
Georgia Bar No. 395165

Johnson Legal Group, P.C.
One Securities Centre, Suite 1005
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305-4809
REJ@JLGlawfirm.com
404-419-2380
Attorneys for Plaintiff

6

## VERIFICATION

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Steven Bellen who, upon being duly sworn, deposes and states on oath that the facts and information contained in the forgoing Verified Complaint are true and correct to the best of his knowledge, information and belief.

_____

Steven Bellen

Sworn to and subscribed before me
this 24th day of February, 2014.

_____

Notary Public
My Commission Expires: 2/18-17

7

# EXHIBIT "A"



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Craig T. Boggs
PHONE: (312) 324-8628
FAX:   (312) 324-9628
EMAIL: CBoggs@perkinscoie.com

January 17, 2014

**VIA FEDERAL EXPRESS AND**
**EMAIL: STEVE.BELLEN@GMAIL.COM**

Steven Bellen
1390 Marina Drive
Dunwoody, GA 30338

Re:     **Post-Employment Obligations**

Dear Mr. Bellen:

My firm represents InnerWorkings, Inc. and its various affiliated companies ("IW") in connection with labor and employment matters. As you know, pursuant to your resignation, your last day of employment with IW is today, Friday, January 17, 2014. IW understands that you may accept employment with and that you plan to begin working for Impact Design Works or an affiliated entity ("Impact"), which as you know, is a direct competitor of IW. IW also understands that as part of your job responsibilities at Impact, you will be assigned to call upon and service AT&T, AIO Wireless or one of their affiliated or related entities ("AT&T") - the same customer you called upon and serviced while working at IW.

IW believes that your employment with Impact will constitute a breach of your post-employment obligations to which you agreed in your Employee Innovations and Proprietary Rights Assignment Agreement (the "Employment Agreement") and your Confidentiality Agreement (the "Confidentiality Agreement"), particularly with respect to your solicitation and servicing of AT&T on behalf of Impact. Copies of your Employment Agreement, Confidentiality Agreement and your corresponding acknowledgement of both policies are enclosed for your reference.

To remind you, under your Employment Agreement, which you acknowledged and agreed to on May 13, 2011, you promised that during your employment with IW, and for twenty four (24) months after the termination of your employment with IW, you would not, directly or indirectly, engage or participate in any activity or employment competitive to IW, defined as

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Mr. Steven Bellen
January 17, 2014
Page 2

engaging in the business of goods or services of in-sourced and/or out-sourced print management services similar to or competitive with IW's business model provided by IW or any subsidiary of IW, or any other activity directly competitive with the current business activities of IW.   In addition to your promise not to compete with IW generally, you also specifically promised that during your employment with IW and for twenty four (24) months after the termination of your employment with IW, you would not, directly or indirectly:

(a)   induce or attempt to induce any customer, supplier, licensee, or business relation of IW to cease doing business with IW, or in any way interfere with the relationship between any customer, supplier, licensee, or business relation of IW;

(b)   solicit the business of any customer of IW, whether or not you had personal contact with such entity for the purpose of engaging in a competing business purpose; or

(c)   induce or attempt to induce any customer, potential customer, supplier, licensee, licensor, or business relation of IW with which you had direct contact with within the twelve months preceding the termination of your employment with IW.

(Employment Agreement ¶ 13).

You further promised that both during and after your employment with IW, you would not use or disclose any Proprietary or Confidential Information, defined as any information applicable to the business of IW or applicable to the business of any client or customer of IW which may be made known to you by IW or by any client of customer of IW, or learned by you in such context during the period of your employment, including all technical and non-technical information related to the current, future and proposed products and services of IW, including IW's information concerning research, procurement requirements, manufacturing, customer lists, business forecasts, sales and merchandising and marketing plans and information, and proprietary or confidential information of any third party that was disclosed to you during your employment with IW, except as may be necessary in the ordinary course of performing your duties on behalf of IW. (Employment Agreement, ¶ 3; Confidentiality Agreement, ¶¶ 1-4).

IW was alarmed to learn that you are planning to engage in activities in direct competition with IW, and that you plan to work with the customers of IW that you serviced for IW, in direct violation of your post-employment obligations contained in the Employment Agreement and Confidentiality Agreement.

Per Paragraph 5 of your Employment Agreement, we demand that you immediately return any and all information related to IW and/or any IW's customers, including but not limited to AT&T, that is in your possession, whether that information is: (i) a hard copy document; (ii)

Mr. Steven Bellen
January 17, 2014
Page 3

on a work, home, or laptop computer; (iii) on a blackberry, PDA, iPhone, or cell phone; or (iv) on an external hard drive, thumb drive, or any other piece of external media that permits the storage of information. You cannot keep any copies. You must collect any information that you may have given to others (and all copies) and return that as well. You cannot review or use any of this information.

Based on the information described above and your employment with a direct competitor of IW, IW has or may have legal claims against you. Therefore, you also must preserve and not destroy all documents (including all email and other electronically stored information) relating to IW (that is not otherwise required to be returned), IW's customers (including AT&T), or your recruitment, hiring, or work at Impact, or any third party with whom you have discussed alternative employment. This includes, but is not limited to, any hard copy document and any email in a personal email account and includes all active, archived, and deleted email -- including on your home/personal computer.  We demand that you immediately preserve all such information whether it is: (i) a hard copy document; (ii) on a work, home, or laptop computer; (iii) on a blackberry, PDA, external media that permits the storage of information.  If any electronic system has a function that includes deleting materials automatically after a certain time period you must disable such a system so that all materials currently existing, and all materials created on a going forward basis, are preserved.

IW takes these matters extremely seriously and is prepared to protect its interests by taking whatever steps are necessary to protect its rights and legitimate business interests to ensure that you comply with your contractual, common law and statutory activity restrictions and other obligations to IW.  Please contact me as soon as possible to discuss whether you intend to comply with your obligations, and if so, we can work out an appropriate and acceptable written acknowledgment for you to sign.  I can be reached at (312) 324-8628.  I look forward to discussing this matter with you further so that we can avoid pursing judicial recourse and relief.

Very truly yours,

Craig T. Boggs

Enclosures

## EMPLOYEE INNOVATIONS AND PROPRIETARY RIGHTS
## ASSIGNMENT AGREEMENT

This Agreement is intended to formalize in writing certain understandings and procedures which have been in effect since the time I was initially employed by and/or doing work for Innerworkings, Inc., ("Company"). In return for my new or continued employment and/or payment for services rendered by Company and other good and valuable consideration, the receipt and sufficiency of which I hereby acknowledge, I acknowledge and agree that:

1.     Duties; At-Will Employment; No Conflict. I will perform for Company such duties as may be designated by Company from time to time. I agree that my employment and/or independent contractor relationship with Company is for no specified term, and may be terminated by Company at any time, with or without cause, and with or without notice. Similarly, I may terminate my employment with Company at any time, with or without cause, and with or without notice. During my period of employment by Company, I will devote my best efforts to the interests of Company and will not engage in other employment or in any activities determined by Company to be detrimental to the best interests of Company without the prior written consent of Company.

2.     Prior Work. All previous work done by me for Company relating in any way to the conception, reduction to practice, creation, derivation, design, development, manufacture, sale or support of products or services for Company is the property of Company, and I hereby assign to Company all of my right, title and interest in and to such previous work.

3.     Proprietary Information. My employment and/or independent contractor status creates a relationship of confidence and trust between Company and me with respect to any information:

        (a)     Applicable to the business of Company; or

        (b)     Applicable to the business of any client or customer of Company, which may be made known to me by Company or by any client or customer of Company, or learned by me in such context during the period of my employment.

All such information has commercial value in the business in which Company is engaged and is hereinafter called "Proprietary Information." By way of illustration, but not limitation, Proprietary Information includes any and all technical and non-technical information including patent, copyright, trade secret, and proprietary information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of Company, and includes, without limitation, respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing manufacturing, customer lists, business forecasts, sales and merchandising and marketing plans and information. "Proprietary Information" also includes proprietary or confidential information of any third party who may disclose such information to Company or to me in the course of Company's business.

4.     Ownership and Nondisclosure of Proprietary Information. All Proprietary Information is the sole property of Company, Company's assigns, and Company's customers, and Company, Company's assigns and Company's customers shall be the sole and exclusive owner of all patents, copyrights, mask works, trade secrets and other rights in the Proprietary Information. I hereby do and will assign to Company all rights, title and interest I may have or acquire in the Proprietary Information. At all times,

1

both during my employment by Company and after termination of such employment, I will keep in confidence and trust all Proprietary Information, and I will not use or disclose any Proprietary Information or anything directly relating to Proprietary Information without the written consent of Company, except as may be necessary in the ordinary course of performing my duties as an employee of Company.

5.     Ownership and Return of Materials. All materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists, and all other tangible media of expression) furnished to me by Company shall remain the property of Company. Upon termination of my employment and/or independent contractor status, or at any time on the request of Company before termination, I will promptly (but no later than five (5) days after the earlier of said termination or Company's request) destroy or deliver to Company, at Company's option, (a) all materials furnished to me by Company, (b) all tangible media of expression which are in my possession and which incorporate any Proprietary Information or otherwise relate to Company's business, and (c) written certification of my compliance with my obligations under this sentence.

6.     Innovations. As used in this Agreement, the term "Innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under trade secret laws), and all other subject matter protectable under patent, copyright, moral right, mask work, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, discoveries, artwork, software, and designs. "Innovations" includes "Inventions," which is defined to mean any inventions protected under patent laws. The innovations as used in this agreement only fall under this contract if the innovation is related to any goods or services of in-sourced and/or out-sourced print management services similar to or competitive with the Innerworkings business model provided by the Company or any subsidiary of the Company, or any other activity directly competitive with the current business activities of the Company or any subsidiary of the Company.

7.     Disclosure of Prior Innovations. I have identified on Exhibit A ("Prior Innovations") attached hereto all Innovations, applicable to the business of Company or relating in any way to Company's business or demonstrably anticipated research and development or business, which were conceived, reduced to practice, created, derived, developed, or made by me prior to my employment with Company (collectively, the "Prior Innovations"), and I represent that such list is complete. I represent that I have no rights in any such Innovations other than those Prior Innovations specified in Exhibit A ("Prior Innovations"). If there is no such list on Exhibit A ("Prior Innovations"), I represent that I have neither conceived, reduced to practice, created, derived, developed nor made any such Prior Innovations at the time of signing this Agreement.

8.     Assignment of Innovations; License of Prior Innovations. I hereby agree promptly to disclose and describe to Company, and I hereby do and will assign to Company or Company's designee my entire right, title, and interest in and to, (a) each of the Innovations (including Inventions), and any associated intellectual property rights, which I may solely or jointly conceive, reduce to practice, create, derive, develop or make during the period of my employment with Company, which either (i) relate, at the time of conception, reduction to practice, creation, derivation, development, or making of such Innovation, to Company's business or actual or demonstrably anticipated research or development, or (ii) were developed on any amount of Company's time or with the use of any of Company's equipment, supplies, facilities or trade secret information, or (iii) resulted from any work I performed for Company,

and (b) each of the Innovations which is not an Invention (as demonstrated by me by evidence meeting the clear and convincing standard of proof), and any associated intellectual property rights, which I may solely or jointly conceive, develop, reduce to practice, create, derive, develop, or make during the period of my employment with Company, which are applicable to the business of Company (collectively, the Innovations identified in clauses (a) and (b) are hereinafter the "Company Innovations"). To the extent any of the rights, title and interest in and to Company Innovations cannot be assigned by me to Company, I hereby grant to Company an exclusive, royalty-free, transferable, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to practice such non-assignable rights, title and interest. To the extent any of the rights, title and interest in and to Company Innovations can be neither assigned nor licensed by me to Company, I hereby irrevocably waive and agree never to assert such non-assignable and non-licensable rights, title and interest against Company or any of Company's successors in interest to such non-assignable and non-licensable rights. I hereby grant to Company or Company's designees a royalty free, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to practice all applicable patent, copyright, moral right, mask work, trade secret and other intellectual property rights relating to any Prior Innovations which I incorporate, or permit to be incorporated, in any Company Innovations. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, any Prior Innovations in any Company Innovations without Company's prior written consent.

9.      Future Innovations. I recognize that Innovations or Proprietary Information relating to my activities while working for Company and conceived, reduced to practice, created, derived, developed, or made by me, alone or with others, within three (3) months after termination of my employment and/or independent contractor relationship may have been conceived, reduced to practice, created, derived, developed, or made, as applicable, in significant part while employed by or working for Company. Accordingly, I agree that such Innovations and Proprietary Information shall be presumed to have been conceived, reduced to practice, created, derived, developed, or made, as applicable, during my employment with Company and are to be promptly assigned to Company unless and until I have established the contrary by written evidence satisfying the clear and convincing standard of proof.

10.     Cooperation in Perfecting Rights to Proprietary Information and Innovations.

(a)      I agree to perform, during and after my employment and/or independent contractor status, all acts deemed necessary or desirable by Company to permit and assist Company, at Company's expense, in obtaining and enforcing the full benefits, enjoyment, rights and title throughout the world in the Proprietary Information and Innovations assigned or licensed to, or whose rights are irrevocably waived and shall not be asserted against, Company under this Agreement. Such acts may include, but are not limited to, execution of documents and assistance or cooperation (i) in the filing, prosecution, registration, and memorialization of assignment of any applicable patents, copyrights, mask work, or other applications, (ii) in the enforcement of any applicable patents, copyrights, mask work, moral rights, trade secrets, or other proprietary rights, and (iii) in other legal proceedings related to the Proprietary Information or Innovations.

(b)      In the event that Company is unable for any reason to secure my signature to any document required to file, prosecute, register, or memorialize the assignment of any patent, copyright, mask work or other applications or to enforce any patent, copyright, mask work, moral right, trade secret or other proprietary right under any Proprietary Information (including improvements thereof) or any Innovations (including derivative works, improvements, renewals, extensions, continuations, divisionals, continuations in part, continuing patent applications, reissues, and reexaminations thereof), I hereby irrevocably designate and appoint Company and Company's duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead of me, (i) to execute, file, prosecute,

register and memorialize the assignment of any such application, (ii) to execute and file any documentation required for such enforcement, and (iii) to do all other lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of patents, copyrights, mask works, moral rights, trade secrets or other rights under the Proprietary Information, or Innovations, all with the same legal force and effect as if executed by me.

11.    No Violation of Rights of Third Parties.  My performance of all the terms of this Agreement and as an employee of Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior to my employment with Company, and I will not disclose to Company, or induce Company to use, any confidential or proprietary information or material belonging to any previous employer or others.  I am not a party to any other agreement which will interfere with my full compliance with this Agreement.  I agree not to enter into any agreement, whether written or oral, in conflict with the provisions of this Agreement.

12.    Survival.  This Agreement (a) shall survive my employment and/or independent contract with Company; (b) does not in any way restrict my right or the right of Company to terminate my employment at any time, for any reason or for no reason; (c) inures to the benefit of successors and assigns of Company; and (d) is binding upon my heirs and legal representatives.

13.    Covenant Not to Compete or Solicit.

(a)    I will not during the Non-Compete Period (as defined below), other than on behalf of Company, directly or indirectly, without the prior written consent of Company, engage anywhere in the Geographic Area (as defined below) in (whether as an employee, agent, consultant, advisor, independent contractor, proprietor, partner, officer, director or otherwise), or have any ownership interest in (except for passive ownership of five percent (5%) or less of any entity whose securities have been registered under the Securities Act of 1933 or Section 12 of the Securities Exchange Act of 1934), or participate in the financing, operation, management or control of, any firm, partnership, corporation, entity or business that engages or participates in a "competing business purpose." The term "competing business purpose" shall mean any goods or services of in-sourced and/or out-sourced print management services similar to or competitive with the Innerworkings business model provided by the Company or any subsidiary of the Company, or any other activity directly competitive with the current business activities of the Company or any subsidiary of the Company. The Non-Compete Period shall begin on the date of this Agreement (the "Effective Date") and shall end twenty four (24) months after the termination of this Agreement.

(b)    I will not during the Non-Compete Period, without the prior written consent of Company, directly or indirectly (i) induce or attempt to induce any customer, supplier, licensee, or business relation of Company to cease doing business with Company, or in any way interfere with the relationship between any customer, supplier, licensee, or business relation of Company or (ii) solicit the business of any customer of Company, whether or not I have or had personal contact with such entity for the purpose of engaging in a competing business purpose.

(c)    During the Non-Compete Period, I will not, directly or indirectly, without the prior written consent of Company, solicit, encourage, hire or take any other action which is intended to induce or encourage, or has the effect of inducing or encouraging, any employee of Company or any subsidiary of Company to terminate his employment with Company or any subsidiary of Company.

(d)    The Geographic Area shall mean (i) the United States or (ii) anywhere in the world outside the United States where Company or any subsidiary of Company conducts business

14.     <u>Separate Covenants</u>. I understand that the covenants contained in the preceding Section 13 shall be construed as a series of separate covenants, one for each county, city, state, or any similar subdivision in any Geographic Area. Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenant contained in the preceding paragraphs. If, in any judicial proceeding, a court refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In the event that the provisions of the preceding Section 13 are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, permitted by applicable laws.

15.     <u>Injunctive Relief</u>. A breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to Company for which there will be no adequate remedy at law, and Company shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate).

16.     <u>Notices</u>. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal delivery, when delivered personally; (b) by overnight courier, upon written verification of receipt; (c) by telecopy or facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt. Notices to me shall be sent to any address in Company's records or such other address as I may specify in writing. Notices to Company shall be sent to Company's Human Resources Department or to such other address as Company may specify in writing.

17.     <u>Governing Law</u>. This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of Illinois, as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Illinois, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in Illinois, such personal jurisdiction shall be nonexclusive.

18.     <u>Severability</u>. If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

19.     <u>Waiver; Amendment; Modification</u>. The waiver by Company of a term or provision of this Agreement, or of a breach of any provision of this Agreement by me, shall not be effective unless such waiver is in writing signed by Company. No waiver by Company of, or consent by Company to, a breach by me, will constitute a waiver of, consent to or excuse of any other or subsequent breach by me. This Agreement may be amended or modified only with the written consent of both me and Company. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

20.     <u>Entire Agreement</u>. This Agreement represents my entire understanding with Company with respect to the subject matter of this Agreement and supersedes all previous understandings, written or oral.

PA\890550.3

5

I certify and acknowledge that I have carefully read all of the provisions of this Employee Innovations and Proprietary Rights Assignment Agreement and that I understand and will fully and faithfully comply with such provisions.

"COMPANY"                                    EMPLOYEE OR CONTRACTOR:

INNERWORKINGS, Inc..

By: _____                By: _____

Title: _____                Printed Name: _____

Dated: _____                 Dated: _____

Exhibit A

PRIOR INNOVATIONS

CONFIDENTIALITY AGREEMENT
(DISCLOSURES **BY** INNERWORKINGS, Inc. )

This Agreement is made and entered into, as of _June 2 7_ , 2009("Effective Date"), by and between InnerWorkings, Inc. ("Company"), having a principal place of business at 600 W. Chicago, Suite 850, Chicago, IL 60610 and _Steve Bolen_ , a(n) ⊠ individual, ☐ partnership, ☐ limited liability partnership, ☐ corporation, ☐ S limited liability company (check the appropriate box) of the state of _Georgia_ , having a principal place of business at _The Caspers LLC_ ("Recipient").

1.      Definition of Confidential Information.  "Confidential Information" as used in this Agreement shall mean any and all technical and non-technical information including patent, copyright, trade secret, and proprietary information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of Company.  "Confidential Information" includes, without limitation, Company's respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing manufacturing, customer lists, business forecasts, sales and merchandising and marketing plans and information.  "Confidential Information" also includes proprietary or confidential information of any third party who may disclose such information to Company or Recipient in the course of Company's business.

2.      Nondisclosure and Nonuse Obligations.  Recipient agrees that Recipient will not use, disseminate, or in any way disclose any Confidential Information to any person, firm or business, except to the extent necessary for internal evaluations in connection with negotiations, discussions, and consultations with personnel or authorized representatives of Company and for any other purpose Company may hereafter authorize in writing.  Furthermore, the existence of any business negotiations, discussions, consultations or agreements in progress between the parties shall not be released to any form of public media without the prior written approval of Company.  Recipient agrees that Recipient shall treat all Confidential Information of Company with the same degree of care as Recipient accords to Recipient's own Confidential Information, but in no case less than reasonable care.  If Recipient is not an individual, Recipient agrees that Recipient shall disclose Confidential Information of Company only to those of Recipient's employees who need to know such information and certifies that such employees have previously agreed, either as a condition of employment or in order to obtain the Confidential Information, to be bound by terms and conditions substantially similar to those terms and conditions applicable to Recipient under this Agreement. Recipient will immediately give notice to Company of any unauthorized use or disclosure of the Confidential Information.  Recipient agrees to assist Company in remedying any such unauthorized use or disclosure of the Confidential Information

3       Exclusions from Nondisclosure and Nonuse Obligations.  Recipient's obligations under Paragraph 2 ("Nondisclosure and Nonuse Obligations"), with respect to any portion of Confidential Information, shall not apply to any such portion that Recipient can document either (a) was in the public domain at or subsequent to the time such portion was communicated to Recipient by Company through no fault of Recipient; (b) was rightfully in Recipient's possession free of any obligation of confidence at or subsequent to the time such portion was communicated to Recipient by Company; or (c) was developed by employees or agents of Recipient independently of and without reference to any information communicated to Recipient by Company.  A disclosure of any portion of Confidential Information, either (a) in response to a valid order by a court or other governmental body, or (b) otherwise required by law, shall not be considered to be a breach of this Agreement or a waiver of confidentiality for other purposes; provided, however, that Recipient shall provide prompt prior written notice thereof to Company to enable Company to seek a protective order or otherwise prevent such disclosure.

4.      Ownership and Return of Confidential Information and Other Materials.  All Confidential Information, and any Derivatives thereof whether created by Company or Recipient, remain the property of Company and no license or other rights to Confidential Information or Derivatives is granted or implied hereby. For purposes of this Agreement, "Derivatives" shall mean:  (a) for copyrightable or copyrighted material, any translation, abridgment, revision or other form in which an existing work may be recast, transformed or adapted; (b) for patentable or patented material, any improvement thereon; and (c) for material which is protected by trade

secret, any new material derived from such existing trade secret material, including new material which may be protected under copyright, patent and/or trade secret laws. Recipient hereby does and will assign to Company all of Recipient's rights, title in interest and interest in and to the Derivatives. All materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists, and all other tangible media of expression) furnished to Recipient by Company shall remain the property of Company. At Company's request and no later than five (5) days after such request, Recipient shall destroy or deliver to Company, at Company's option, (a) all materials furnished to Recipient by Company, (b) all tangible media of expression in Recipient's possession or control which incorporate or in which are fixed any Confidential Information, and (c) written certification of Recipient's compliance with Recipient's obligations under this sentence.

5.    No Warranty. All Confidential Information is provided "AS IS" and without any warranty, express, implied or otherwise, regarding such Confidential Information's accuracy or performance.

6.    No Export. Recipient will not export, directly or indirectly, any technical data acquired from Company pursuant to this Agreement or any product utilizing any such data to any country for which the U.S. Government or any agency thereof at the time of export requires an export license or other governmental approval without first obtaining such license or approval.

7.    Term. This Agreement shall govern all communications from Company to Recipient that are made from the Effective Date forward with out any exception.

8.    No Assignment. Recipient shall not assign or transfer any rights or obligations under this Agreement without the prior written consent of Company.

9.    Notices. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal delivery, when delivered personally; (b) by overnight courier, upon written verification of receipt; (c) by telecopy or facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt. Notice shall be sent to the addresses set forth above or to such other address as either party may specify in writing.

10.    Governing Law and Forum; Legal Fees. This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of *Illinois*, as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Illinois, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in Illinois, such personal jurisdiction shall be nonexclusive. If any dispute arises between the parties with respect to the matters covered by this Agreement which leads to a proceeding to resolve such dispute, the prevailing party in such proceeding shall be entitled to receive such prevailing party's reasonable attorneys' fees, expert witness fees and out-of-pocket costs incurred in connection with such proceeding, in addition to any other relief to which such prevailing party may be entitled.

11.    Severability. If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

12.    Waiver; Amendment; Modification. No term or provision hereof will be considered waived by Company, and no breach excused by Company, unless such waiver or consent is in writing signed by Company. The waiver by Company of, or consent by Company to, a breach, of any provision of this Agreement by Recipient shall not operate or be construed as a waiver of, consent to, or excuse of any other or subsequent breach by Recipient. This Agreement may be amended or modified only by mutual agreement of authorized representatives of the parties in writing.

13.    Injunctive Relief. A breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to Company for which there will be no adequate remedy at law, and Company

shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate).

14.     Entire Agreement.  This Agreement constitutes the entire agreement with respect to the Confidential Information disclosed hereunder and supersedes all prior or contemporaneous oral or written agreements concerning such Confidential Information.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above

"Company"                                                  "Recipient"

InnerWorkings, Inc..                                       Steve Bellin

By: _Kais Fleck_____                                       By: _Steve Bellin_____

Name: _____                                      Name: _____

Title: _____                                     Title: _Project Manager_



**Policy Acknowledgement Report**

To review a list of employees who have acknowledged policies online, click the appropriate policy.

- Computer Use Policy
- Confidentiality Agreement
- Employee Handbook
- Employee Innovations & Proprietary Rights Assignment Agreement
- Standards of Business Conduct - English
- Standards of Business Conduct - Spanish

| | | | |
|---|---|---|---|
| Elizabeth | Barrett | Sbarrett@innerwork | 04/25/2011 10:23:23 | View |
| Kyle | Barrio | KBarrio@innerwork | 06/42/2012 08:45:39 | View |
| Michael | Bartholomew | MBartholomew@innerwork | 10/13/2011 05:13:00 | View |
| Angela | Baskins | ABaskins@innerwork | 01/21/2011 12:32:24 | View |
| Alaina | Batdorf | ABatdorf@innerwork | 09/30/2011 12:36:52 | View |
| Brian | Battaglia | BBattaglia@innerwork | 04/27/2011 08:27:07 | View |
| Russell | Battistoni | RBattistoni@innerwork | 08/03/2011 11:16:48 | View |
| Mary | Baudoin | KBaudoin@innerwork | 02/28/2011 09:31:44 | View |
| David | Bayler | DBayler@innerwork | 01/20/2011 02:30:43 | View |
| Madlynn | Beck | MBeck@innerwork | 08/27/2011 08:46:42 | View |
| Carol | Beisiegel | CBeisiegel@innerwork | 12/20/2011 02:39:19 | View |
| Brian | Bell | BBell@innerwork | 04/25/2011 08:27:16 | View |
| Elayne | Bell | EBell@innerwork | 05/12/2011 12:17:29 | View |
| Steven | Bellon | SBellon@innerwork | 04/13/2011 06:40:17 | View |
| Karen | Bench | KBench@innerwork | 08/10/2011 06:42:47 | View |
| Donald | Bennett | DBennett@innerwork | 03/01/2011 07:18:19 | View |
| Taylor | Bennett | TBennett@innerwork | 01/14/2011 03:49:25 | View |
| Kathleen | Beno | KBeno@innerwork | 01/28/2011 09:29:08 | View |

Home ▾   Time & Attendance ▾   Pay & Taxes ▾   Personal Information ▾   Benefits ▾   Career ▾

**Resources**

**Resources Page**

This page includes policies, forms, and links that enable you to access your employee and benefit information.

**Company Policy**

**Policy Acknowledgements.**

To read and acknowledge a policy, click the policy name.

| Policy Name | Version | Required | Acknowledged | Acknowledge Date | Acknowledgement By |
|---|---|---|---|---|---|
| Employee Handbook 2013 | 2 1 | Yes | | | |
| Confidentiality Agreement | 1 0 | Yes | ✓ | 05/13/2011 | |
| Employee Innovations & Proprietary Rights Assignment Agreement | 1 0 | Yes | ✓ | 05/13/2011 | ✓ |
| Employee Handbook (Not Mandatory, please refer to Employee | 1 0 | Yes | ✓ | 05/13/2011 | |

■ Done

# EXHIBIT "B"

Portal Integration

Automatic Data Processing, Inc @ portal.adp.com /wps/myportal/!ut/p/c5/04_SB8K8xLLM9MSSzPy8xBz9CP0os_gAS1cTQ08TQ08TA093v28hLA0cli

Employee Innovations & Proprietary Rights Assignment Agreement

FA9005503                                           5

I certify and acknowledge that I have carefully read all of the provisions of this Employee Innovations and Proprietary Rights Assignment Agreement and that I understand and will fully and faithfully comply with such provisions.

"COMPANY"                              EMPLOYEE OR CONTRACTOR:

INNERWORKINGS, Inc..

By: _____               By: _____

Title: _____            Printed Name: _____

Dated: _____            Dated: _____

✓ I certify that I have read the policy above.

[ View Next ]      [ Return To List ]